

1

2          Signed and Filed: April 30, 2007

3

4          _____
               **THOMAS E. CARLSON**
5               **U.S. Bankruptcy Judge**
          _____
6

7

8                  **UNITED STATES BANKRUPTCY COURT**

9            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11  In re                              ) Case No. 04-32921 TEC
                                       )
12  THOMAS LLOYD,                      )
                                       ) Chapter 11
13                                     )
                     Debtor.           )
14  _____ )
    JEFFREY E. HOFFMAN,               )
15                                     )
                     Plaintiff,        )
16                                     )
        vs.                            ) Adv. Proc. No. 05-3328 TC
17                                     )
    THOMAS R. LLOYD, an individual,   )
18  EDWARD L. BLUM, an individual, and )
    DOES 1 through 20, inclusive,     )
19                                     )
                     Defendants.       )
20  _____ )
    THOMAS LLOYD,                     )
21                                     )
                     Cross-Plaintiff, )
22      vs.                            )        O P I N I O N
                                       )
23  JEFFREY E. HOFFMAN, dba H & B     )
    PROPERTIES; H & B PROPERTIES, LLC,; )
24  J. EDWARDS INVESTMENT GROUP, INC., )
    and NORCAL FINANCIAL, INC.,       )
25                                     )
                     Cross-Defendants. )
26  _____ )

27
    Thomas E. Carlson, Bankruptcy Judge.
28

                              -1-

The principal question presented is whether a homeowner who sells his home while facing foreclosure may cancel that sale long after the fact, because the sale contract omitted one of two notices of the right to cancel required under section 1695.5 of the California Home Equity Sales Contracts Act. Because the sale contract failed to provide notice of the right to cancel "in immediate proximity to the space reserved for the equity seller's signature," the contract did not substantially comply with the requirements of section 1695.5 and, as a consequence, the time to cancel the sale never expired.

**FACTS**

Thomas Lloyd owned and resided in a single-family house in San Francisco (the Residence). In May 2003, he was in default on his mortgage payments and looking for help, when he met Jeffrey Hoffman. Lloyd sold the Residence to Hoffman in a transaction that Lloyd hoped would enable him ultimately to keep the Residence.

**1.   The Sale of the Residence**

On May 28, 2003, Lloyd and Hoffman signed three related contracts regarding the Residence: the Purchase-Sale Agreement; the Lease; and the Option. The Purchase-Sale Agreement provided for Hoffman to purchase the Residence from Lloyd for $900,000. The Lease provided for Lloyd to rent back the Residence from Hoffman on a month-to-month basis. The Option permitted Lloyd to repurchase the Residence from Hoffman on or before June 30, 2005.[1]

Of great importance to the present action, the Purchase-Sale Agreement did not contain a notice of the right to cancel next to

---

[1]   The Option does not state the price at which Lloyd could repurchase the Residence.

-2-

the line for Lloyd's signature. Through the Home Equity Sales

Contracts Act[2] (HESCA), the California Legislature closely regulates

sales of residences that occur after foreclosure proceedings have

begun, to protect "homeowners in financial distress" against "the

importunities of equity purchasers who induce homeowners to sell

their homes for a small fraction of their fair market values. . .

." § 1695(a). Under HESCA, the Purchase-Sale Agreement should

have contained notice of the right to cancel next to the line for

Lloyd's signature, and Lloyd had a right to cancel the sale up to

five calendar days after he was accorded proper notice of that

right.

The sale of the Residence to Hoffman closed on August 25,

2003. On that date, Lloyd executed a grant deed, and Hoffman paid

the purchase price by taking out a new loan against the Residence

in the amount of $640,000. The proceeds of that loan were used to

retire Lloyd's existing loans ($591,738) and to pay Lloyd

approximately $20,000. Lloyd remained on the premises under the

Lease. Hoffman transferred his interest in the Residence to H&B

Properties, an LLC in which he was the sole member.

**2. Settlement of the Unlawful Detainer Action**

Lloyd soon fell behind in the rent payments due under the

Lease. H&B Properties filed an unlawful detainer action on June 2,

2004. This action was settled before trial via an agreement

executed on August 3, 2004 (the Settlement Agreement). The

Settlement Agreement allowed Lloyd 90 days either: (a) to find a

---

[2] HESCA is codified in sections 1695 through 1695.17 of the California Civil Code. Unless otherwise noted, all statutory references in this decision are to sections of the California Civil Code.

Case: 05-03328   Doc# 116   Filed: 04/30/07   Entered: 04/30/07 15:42:45   Page 3 of
26

1 buyer for the Residence; or (b) to repurchase the Residence
2 himself.  If Lloyd failed to perform either alternative, the Option
3 and Lease would be terminated, and judgment would be entered
4 against Lloyd for unpaid rent and attorneys fees.

5     Shortly after the parties executed the Settlement Agreement,
6 H&B Properties further encumbered the Residence by obtaining a
7 $110,000 loan from Norcal Financial, secured by a second deed of
8 trust.  Norcal Financial is another entity controlled by Hoffman.

9     Of importance to this case, the Settlement Agreement contained
10 broad mutual releases.  Those releases apply to claims unknown at
11 the time of the release, because the parties expressly waived the
12 protections of California Civil Code section 1452.  The Settlement
13 Agreement did not expressly address any rights under HESCA.

14     Lloyd was unable to perform under the Settlement Agreement and
15 filed a chapter 11 petition in this court on October 15, 2004.

16 **3.    The Notice of Rescission**

17     On October 18, 2004, Lloyd recorded a document entitled Notice
18 of Rescission of Grant Deed Recorded Pursuant to Home Equity Sales
19 Contract (the Notice of Rescission).  In that Notice, Lloyd
20 asserted the right under HESCA to rescind both the grant deed to
21 Hoffman and the Purchase-Sale Agreement.

22     Hoffman initially sought to litigate the validity of the
23 Notice of Rescission in the California state courts.  He filed a
24 motion seeking relief from the automatic stay to permit him to file
25 a state-court action against Lloyd.  Noting that the validity of
26 the Notice of Rescission turned upon California law, this court
27 granted the requested relief from stay.  Hoffman filed an action
28 against Lloyd in the San Francisco County Superior Court seeking

-4-

cancellation of the Notice of Rescission and damages resulting from the slander of title that the Notice created. Lloyd answered and asserted a cross complaint against Hoffman seeking an accounting, quiet title to the Residence, and other relief. On September 14, 2005, Lloyd removed the Superior Court action to this court. At this juncture, Hoffman did not file a motion to remand, but instead sought to have this court summarily grant relief in his favor.

**4.    The Settlement Agreement Does Not Bar Rescission**

Hoffman filed a motion to have this court cancel the Notice of Rescission on the ground that it was barred by the general release in the Settlement Agreement. In opposing that motion, Lloyd argued that the release in the Settlement Agreement should not bar cancellation of the sale, because HESCA expressly provides "[a]ny waiver of the provisions of this chapter shall be void and unenforceable as contrary to public policy." § 1695.10.

The court determined that it must hold an evidentiary hearing. In light of section 1695.10, the general release would be enforceable, if at all, only if it represented a knowing and intelligent waiver of Lloyd's rights under HESCA. Lloyd had submitted a declaration stating that he was unaware of his right to cancel under HESCA at the time he signed the Settlement Agreement. There thus existed a genuine issue of material fact regarding the enforceability of the release.

Before the evidentiary hearing commenced, Hoffman disclosed a copy of a one-page document entitled "Notice Required by California Law" (the Signed Separate-Page Notice). This Notice explained the right to cancel under HESCA, stated the seller could cancel the sale on or before June 4, 2003, and purported to bear Lloyd's

-5-

undated signature at the bottom.  Lloyd's counsel asserted at a
pretrial hearing that the signature was a forgery and stated that
he would object to introduction of the document at trial.

Following the evidentiary hearing, the court determined that
the general release in the Settlement Agreement did not bar Lloyd
from cancelling the sale of the Residence under HESCA.  After
hearing testimony from the parties and counsel involved in the
negotiation of the Settlement Agreement (during which Hoffman did
not attempt to introduce the Signed Separate-Page Notice), this
court made the finding of fact that Lloyd was unaware of his rights
under HESCA at the time he signed the Settlement Agreement.  The
court made the conclusion of law that the general release was not
applicable to Lloyd's rights under HESCA if he was unaware of those
rights at the time he executed that release.[3]

---

[3] In an unpublished Decision After Trial filed on March 20,
2006, this court explained its conclusions of law in the following
language.

> I conclude that the release was effective with
> respect to Lloyd's rights under Section 1695 only if:
> (1) the release occurred in the settlement of a ripe
> controversy in which the significance of those rights had
> become apparent; and (2) the release constituted a
> knowing and intelligent waiver of those rights.  In so
> concluding, I note the following.  First, the California
> Legislature expressly provided that rights under Section
> 1695 cannot be waived.  Cal. Civ. Code § 1695.10.
> Although I do not believe that the Legislature meant to
> bar *settlement* of ripe claims arising under Section 1695,
> the anti-waiver provision suggests that any such
> settlement should be attended with adequate safeguards.
> Second, California courts have held that any waiver of an
> important statutory right must be knowing and
> intelligent.  <u>Cathay Bank v. Lee</u>, 14 Cal.App. 4th 1533,
> 1539 (1993); <u>accord</u> <u>In re Acosta</u>, 182 B.R. 561, 566-67
> (N.D.Cal. 1994).  Third, Section 1695 is important
> consumer protection legislation, much like the Federal
> Truth-in-Lending Act.  Thus, I find both persuasive and
> pertinent a decision in which a general release that did
> not specifically acknowledge the right to rescind under
> TILA was held not to bar the later exercise of that
> right.  <u>Mills v. Home Equity Group, Inc.</u>, 871 F.Supp.

-6-

**5.    Summary Judgment Granted**

Following the denial of Hoffman's motion, Lloyd filed a motion for summary judgment.  He argued that Hoffman, as the equity purchaser, had the duty to comply with the HESCA requirements regarding notice of the right of cancellation.  § 1695.5(a).  He argued that the Purchase-Sale Agreement did not comply with those notice requirements because, among other reasons, it failed to provide notice of the right to cancel next to the space for the seller's signature (the Next-to-Signature Notice).  § 1695.5(a).  He argued that the right to cancel never expired and that the Notice of Rescission was timely, because proper notice of that right had never been given.  § 1695.5(d).

In support of the motion for summary judgment, Lloyd submitted a declaration stating that on May 28, 2003, he signed only three documents (the Purchase-Sale Agreement, the Lease, and the Option), and that none contained the Separate-Page Notice.

Hoffman opposed the motion for summary judgment, contending that he had substantially complied with the notice requirements of HESCA.  Hoffman argued that the Signed Separate-Page Notice fulfilled the purpose behind the required Next-to-Signature Notice. In support of his argument, Hoffman submitted his own declaration, in which he stated that the Signed Separate-Page Notice was part of his business records.

This court granted summary judgment for Lloyd regarding Hoffman's failure to comply with the notice requirements of HESCA and the timeliness of Lloyd's Notice of Rescission.  Hoffman, as

---

1482, 1485-86 (D.D.C. 1994).

-7-

the equity purchaser, had the duty to show compliance with the
notice requirements of HESCA. § 1695.6(a). To have any hope of
showing substantial compliance with the Next-to-Signature Notice
requirement, Hoffman had to offer admissible evidence that Lloyd
had signed the Separate-Page Notice on the same date he signed the
Purchase-Sale Agreement. Lloyd's purported signature was not
dated. Hoffman's declaration did not state that Hoffman saw Lloyd
sign the Notice, and therefore did not constitute admissible
evidence that Lloyd signed it at the same time he signed the
Purchase-Sale Agreement. Hoffman had not requested further time
under Rule 56(f) to obtain such evidence. In light of Hoffman's
failure to comply with the notice requirements of HESCA, the time
to cancel never ran, and the Notice of Rescission was therefore
timely. § 1695.5(d).

On the basis of the summary judgment, the court ordered the
dismissal of Hoffman's claims for slander of title and for
cancellation of the Notice of Rescission. The court also stated
its intent to grant Lloyd's claim to quiet title to the Residence
in his name. The court reserved the issue of whether Lloyd should
be required to return any consideration received as a condition of
cancelling the sale, and did not immediately enter judgment on any
of the claims.

**6.    Conditions on Rescission**

The parties briefed the question whether any conditions should
be imposed on Lloyd's cancellation of the sale. Hoffman asked that
Lloyd be required to pay more than $500,000 to restore Hoffman to
his former position. He sought reimbursement for many categories
of expenses he had incurred: mortgage interest, property taxes,

-8-

transfer taxes, maintenance, improvements, insurance, loan fees, management fees, attorneys fees, and unpaid rent. Lloyd acknowledged that he must return any net value received. He argued, however, that much of the amount Hoffman sought did not represent value Lloyd received, and that the value Lloyd did receive was fully offset by the increased debt against the property Lloyd would now be required to pay. The court issued a tentative ruling that no reimbursement would be required, and scheduled a hearing for February 28, 2007 to allow the parties to address the question further.

**7.    The Motion to Reopen the Summary Judgment**

Hoffman responded to this tentative ruling by attempting to reopen the ruling granting Lloyd's motion for summary judgment. Hoffman first argued that the Signed Separate-Page Notice had been sufficiently authenticated by Hoffman's declaration stating that Notice to be part of his business records, and by the similarity between the signature on the Notice and Lloyd's signatures on the Purchase-Sale Agreement, Lease, and Option. He also argued that because the Notice itself was dated Mary 28, 2003, it constituted sufficient evidence that Lloyd signed it on that date to create a triable issue of fact. Hoffman next sought to reopen the summary judgment by offering new evidence. He submitted a declaration from Asher Robertson, the broker who represented Lloyd in the sale to Hoffman, stating that Hoffman had signed the Separate-Page Notice on the same date he signed the Purchase-Sale Agreement, Lease, and Option.

In opposing Hoffman's motion, Lloyd first disputed that summary judgment had been improperly granted. Even if the Signed

-9-

Separate-Page Notice was dated May 28, 2003, the signature on the Notice was undated, and Hoffman had offered no evidence to controvert Lloyd's declaration that he did not sign the Separate-Page Notice on May 28th. Lloyd next contended that Hoffman should not be allowed to offer the Robertson declaration at such a late date, because Hoffman had met with Robertson for several hours in January 2006, well before the summary judgment motion.

At the February 28, 2007 hearing, it became apparent that there remained two legal questions the court must resolve. First, the parties agreed that the court should determine whether the Signed Separate-Page Notice would constitute substantial compliance with the HESCA notice requirements, before considering (or reconsidering) the factual question whether Lloyd had signed that notice at the same time he signed the Purchase-Sale Agreement. Second, the court should determine what categories of reimbursement Lloyd must make as a condition to cancellation of the sale. If the legal standard Lloyd urged was correct, Hoffman would not be entitled to reimbursement, even if Hoffman prevailed regarding the relevant factual disputes.

**DISCUSSION**

**I.**
**COMPLIANCE WITH HESCA REQUIREMENTS**
**REGARDING NOTICE OF RIGHT TO CANCEL, AND**
**THE TIMELINESS OF THE NOTICE OF RESCISSION**

**1.  Statutory Framework**

The California Legislature enacted HESCA in 1979 to protect homeowners in foreclosure from fraudulent schemes by home equity purchasers. The Legislature found that homeowners in financial distress were often induced to sell their homes for a small

-10-

fraction of their market value through various types of pressure and misrepresentation.[4] HESCA protects homeowners by: (1) requiring home equity sales contracts to be in writing and to contain certain disclosures; (2) providing the equity seller an opportunity to cancel the sale; and (3) prohibiting the equity purchaser from paying consideration, receiving a conveyance, or encumbering the property until the right to cancel has expired. §§ 1695.2 through 1695.6.

The protections of HESCA apply to the sales of residential property of 1-4 units that the seller occupies as his or her principal residence, and against which there is an outstanding notice of default under a deed of trust or mortgage. § 1695.1(b). The statute expressly excludes from its coverage various types of sales posing less opportunity for abuse: foreclosure sales, deeds in lieu of foreclosure, sales directed by court order, sales to a spouse or blood relative, and sales to a person who intends to reside in the property. § 1695.1(a).

HESCA closely regulates the form of home equity sales contracts. Such contracts must be in writing, must state the total consideration to be paid and the terms of payment, and must state the time at which possession is to be transferred, and the terms of any rental agreement. §§ 1695.2, 1695.3. The contract must also contain two types of notices: (1) a notice of the seller's right to cancel, described in more detail below; and (2) a notice that the buyer cannot ask the seller to sign any deed or other document until the right to cancel has expired. §§ 1695.3(h), 1695.5(a).

---

[4] In section 1695, the Legislature made detailed findings and conclusions, which are set forth in more detail in part II.4, infra.

-11-

The equity seller's right to cancel is the heart of the statutory scheme. The equity seller may cancel the contract until the earlier of midnight of the fifth business day after he or she signs a contract "that complies with this chapter," or 8:00 a.m. on the day scheduled for a foreclosure sale. § 1695.4(a). The seller may exercise the right to cancel by delivering to the equity purchaser any writing indicating the seller's intention to cancel the contract. § 1695.4(b), (c).

The written contract must contain two separate notices of the right to cancel. The first of these notices is what I shall call the Next-to-Signature Notice. The contract

> shall contain in immediate proximity to the space reserved for the equity seller's signature a conspicuous statement . . . as follows: "You may cancel this contract for the sale of your house without any penalty or obligation at any time before (date and time of day). See the attached notice of cancellation form for an explanation of this right."

§ 1695.5(a).

The second of these notices is what I shall call the Separate-Page Notice. The contract must be accompanied by a "notice of cancellation" on a separate page attached to the contract that states the deadline for cancellation, explains how the seller may cancel the contract, and contains a space in which the seller may indicate his or her intent to exercise the right to cancel. § 1695.5(b).

HESCA states expressly that the right to cancel does not expire before the seller has received the required notices. Section 1695.5(d) states "[u]ntil the equity purchaser has complied with this section [governing notice of the right to cancel], the equity seller may cancel the contract." Section 1695.4(a) provides

-12-

that the five-day cancellation period begins when "the equity seller signs a contract that complies with this chapter."

To make the right to cancel more effective, the equity purchaser may not pay any consideration, accept a deed, record a deed, or transfer or encumber the property until the right to cancel has expired. § 1695.6(b). Thus, the Legislature contemplated that the equity seller would not have to return any consideration, or undo any other aspect of the contemplated sale, as a condition of cancelling the sale contract. The statute also states that the seller's right to cancel is "[i]n addition to any other right of rescission. . . ." § 1694.5(a).

The equity seller is not protected against third parties who in good faith and without knowledge "of a violation of this chapter" purchase the property for value from the equity purchaser or who loan money to the equity purchaser secured by the property. § 1695.6(b)(3).

HESCA provides that an equity seller may recover damages and attorneys fees if the equity purchaser does not promptly and "without condition" honor a timely notice of cancellation. § 1695.7. The court must treble any actual damages resulting from the equity purchaser encumbering the property before the cancellation period has expired. Id.

**2.   Facts Related to Compliance with the Statute**

The Purchase-Sale Agreement did not contain the Next-to-Signature Notice required under section 1695.5(a). The parties used a standard-form purchase-sale agreement that did not contain or provide room for such a notice next to the signature line.

-13-

Lloyd may, however, have signed the Separate-Page Notice. As noted above, this is disputed. For the purpose of the present inquiry, I will assume that Lloyd signed the Separate-Page Notice on the same day he signed the Purchase-Sale Agreement.

Whether the equity sale contract contained the required notices of right to cancel determines whether Lloyd timely exercised the right to cancel. As noted above, HESCA states in two different places that the time limit on the right to cancel does not begin to run until the equity seller signs a contract that provides the required notices of that right. §§ 1695.4(a), 1695.5(d).

Lloyd contends that he timely exercised the right to cancel, because the contract he signed did not contain the Next-to-Signature Notice. Hoffman contends that Lloyd did not timely exercise the right to cancel, because the Purchase-Sale Agreement together with the Signed Separate-Page Notice *substantially complied* with the statutory requirements. Hoffman contends that Lloyd's signature on the Separate-Page Notice brought that notice to Lloyd's attention, thereby fulfilling the statutory purpose behind the Next-to-Signature Notice.[5]

---

[5] The contract also did not contain the notice required by section 1695.3(h), stating that the equity purchaser cannot ask the equity seller to sign any deed until the right to cancel has expired. It appears, however, that the failure to provide this notice is immaterial. If the contract substantially complied with the statutory requirements regarding notice of the right to cancel, the right to cancel expired before Lloyd signed any deed. If the contract did not substantially comply, the right to cancel has never expired, without regard to any violation of section 1695.3(h).

-14-

Case: 05-03328    Doc# 116    Filed: 04/30/07    Entered: 04/30/07 15:42:45    Page 14 of
26

### 3. The Doctrine of Substantial Compliance

The California Supreme Court defined "substantial compliance" regarding consumer-protection laws in <u>Stasher v. Harger-Haldeman</u>, 58 Cal. 2d 23 (1962). The statute at issue there required contracts concerning conditional sales of motor vehicles to be in writing and to contain various notices regarding purchase price and payments. The court set forth the following test for determining whether the notices given satisfied the requirements of the statute.

> Substantial compliance, as the phrase is used in the decisions, means actual compliance in respect to the substance essential to every reasonable objective of the statute. But when there is such actual compliance as to all matters of substance then mere technical imperfections of form or variations in mode of expression by the seller, or such minima as obvious typographical errors, should not be given the stature of non-compliance and thereby transformed into a windfall for an unscrupulous and designing buyer.

<u>Id.</u> at 29.

The California Court of Appeal applied <u>Stasher</u> to a notice requirement similar to the one involved here in <u>Malek v. Blue Cross of California</u>, 121 Cal.App. 4th 44 (2004). <u>Malek</u> involved Health and Safety Code section 1363.1, which provides that an arbitration agreement in a health care plan is enforceable only if notice of the arbitration provision is prominently displayed "immediately before the signature line" and clearly discloses that the parties are giving up their constitutional right to trial in a court of law. <u>Id.</u> at 50. The enrollment form at issue disclosed that the parties relinquished their right to trial "in a court of law before a jury." This notice, however, was not displayed immediately before the signature line. <u>Id.</u> at 61.

-15-

1    <u>Malek</u> held that the notice provided did not substantially
2 comply with the statute.  The court reasoned that placement of the
3 notice next to the signature line was essential to one of the
4 objectives of the statute.

> The purpose of section 1363.1 is to disclose the
> requirement to arbitrate *and* to ensure a knowing waiver of
> the right to a jury trial. . . . [T]here is no indication
> that the Maleks knowingly waived their right to a jury
> trial based on the juxtaposition of the signature line.
> The arbitration provision is on the left-hand side of the
> enrollment form while the signature line is on the lower
> right-hand side of the form.  The signature line appears
> directly below the authorization to obtain or release
> medical information.  This placement is not a technical
> defect of form because it leaves in doubt whether the
> Maleks knowingly waived their right to a jury trial.
> Under these circumstances, the statutory objectives of
> section 1363.1 have not been met.

<u>Id.</u> at 72-73 (emphasis in original).

    <u>Stasher</u> and <u>Malek</u> do not directly resolve the present case.
<u>Stasher</u> does tell us, however, that *substantial* compliance means
*actual* compliance with every reasonable purpose of the statute.
<u>Malek</u> tells us that placement of a notice next to the signature line
of a contract may be essential to the purpose of a statute.

**4.  Does the Present Contract Substantially Comply with Section 1695.5?**

    To determine whether Hoffman substantially complied with
section 1695.5, we must determine whether the legislative purpose
behind the Next-to-Signature Notice is satisfied by Lloyd's
signature on the Separate-Page Notice.

    The Legislature stated that the right to cancel is intended to
help homeowners make sound decisions while they are under the
strain of foreclosure proceedings.  The "Legislative findings and
declarations" state in relevant part:

> (a)  The Legislature finds and declares that . . .
> [d]uring the time period between the commencement of

-16-

foreclosure proceedings and the scheduled foreclosure sale date, homeowners in financial distress, especially the poor, elderly, and financially unsophisticated, are vulnerable to the importunities of equity purchasers . . . .

(b)  The Legislature declares that it is the express policy of the state to preserve and guard the precious asset of home equity, and the social as well as the economic value of homeownership.
. . .

(d)  The intent and purposes of this chapter are the following:
(1)  To provide each homeowner with information necessary to make an informed and intelligent decision regarding the sale of his or her home to an equity purchaser [and] . . . to afford homeowners a reasonable and meaningful opportunity to rescind sales to equity purchasers . . . .
(2) This chapter shall be liberally construed to effectuate this intent and to achieve these purposes.

§ 1695.

The most important expression of legislative purpose, of course, is the language of the statute itself.  <u>Cal. School Employees Ass'n. v. Governing Bd. of the Marin Cmty. Coll. Dist.</u>, 8 Cal. 4th 333, 338 (1994) (en banc).  A salient characteristic of HESCA is that it requires *two notices* of the right to cancel: the Next-to-Signature Notice and the Separate-Page Notice.  Under the oft-cited doctrine that courts must attempt to give effect to all provisions of a statute, I assume that each of the required notices serves a function the other does not.  Cal. Code Civ. Proc. § 1858; <u>Parris v. Zolin</u>, 12 Cal. 4th 839, 845 (1996).  More specifically, because the Separate-Page Notice explains the right to cancel in more detail than the Next-to-Signature Notice, I must assume that the Next-to-Signature Notice provides some separate, additional benefit.

-17-

It is not hard to discern the benefit to be derived from the Next-to-Signature Notice: the equity seller is more likely to notice it. People of all degrees of sophistication understand the importance of the *signing* of a written contract. It is at that stage that the seller should be focused most carefully on the details of the transaction. I conclude that the Legislature required that notice of the right to cancel be placed "in immediate proximity" to the signature line to increase the likelihood that the equity seller would effectively comprehend that right. While the Separate-Page Notice provides a full description of the right to cancel, it does not have the same ability to grab the attention of the equity seller by being in the seller's field of vision at the key moment when the seller executes the contract.

Does Lloyd's signature[6] on the Separate-Page Notice make up for Hoffman's failure to place a notice next to the signature line on the Purchase-Sale Agreement?

The Legislature could have required the equity seller to sign and date the Separate-Page Notice. By requiring instead that notice be placed next to the signature line of the sale contract, the Legislature determined that the signing of the sale contract provides a unique opportunity to draw the seller's attention to the right to cancel. Such a determination is not unreasonable. It is reasonable to assume that most people who sell a home view the signing of the sale contract as the crucial event, and treat the numerous other papers they complete as formalities subsidiary to that event.

---

[6] As noted above, for the purpose of this decision, the court assumes without deciding that Lloyd signed the Separate-Page Notice on the same date he signed the Purchase-Sale Agreement.

-18-

1    I determine that actual compliance with the Next-to-Signature
2 Notice requirement is essential to the purpose of HESCA.  This is
3 so because of the Legislature's express finding that homeowners in
4 foreclosure are often pressured to make poor decisions, the central
5 role of the right to cancel in the statutory scheme for helping
6 homeowners to avoid poor decisions, and the existence of a
7 reasonable basis to believe that placing notice of the right to
8 cancel next to the signature line of the sale contract affords a
9 unique opportunity to draw attention to that right.  Thus, the
10 Purchase-Sale Agreement, even with the Signed Separate-Page Notice,
11 does not substantially comply with the requirements of section
12 1695.5, because it is not in "actual compliance in respect to the
13 substance essential to every reasonable objective of the statute."
14 Stasher, supra, 58 Cal 2d. at 29.

**II.**
**CONDITIONS UPON CANCELLATION**

17    Hoffman contends that Lloyd should be permitted to cancel the
sale only upon tendering to him more than $500,000, the amount
Hoffman contends is necessary to restore him to his former
position.  Lloyd concedes that the court may require him to return
value he received to prevent unjust enrichment.  Lloyd argues,
however, that when all facets of the transaction are properly
accounted for, he received no net value.  The most important
difference between the parties concerns the viewpoint the court
should apply to the question of restitution.  Hoffman argues that
he must be restored to the *status quo ante*, even though he is the
party responsible for the circumstances justifying cancellation of
the contract.  Lloyd argues the contrary.

-19-

## 1. The Appropriate Legal Standard

California law does not support Hoffman's theory. The Civil Code instructs the courts to prevent unjust enrichment of the rescinding party whenever possible, but does not require that the party against whom rescission is invoked be restored to the *status quo ante*. Section 1691 states that the party rescinding a contract must offer to "[r]estore to the other party everything of value which he has received from him under the contract. . . ." Section 1692 states in relevant part:

> If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties.

Case law confirms that the primary goal is to avoid unjust enrichment when possible, and that the court enjoys broad discretion in setting appropriate conditions upon rescission. See McCoy v. West, 70 Cal. App. 3d 295, 302 (1977).[7]

The Restatement of Restitution provides that even restitution aimed at preventing unjust enrichment should not be ordered when that would frustrate the policy giving rise to the right to rescind.

> A person who renders performance under an agreement that is illegal or otherwise unenforceable for reasons of public policy may obtain restitution . . . as necessary to prevent unjust enrichment, if the allowance of

---

[7] Hoffman cites Runyan v. Pacific Air Industries, Inc., 2 Cal. 3d 304, 316 (1970) as stating "[i]t is the purpose of rescission 'to restore both parties to their former position as far as possible.'" Neither Runyan, nor any other case Hoffman cites, actually holds that the party responsible for the circumstances justifying rescission must be restored to the *status quo ante* when that would require the rescinding party to restore more than the value that party received, and when that would impose a loss on the rescinding party for the benefit of the more culpable party.

-20-

restitution will not defeat or frustrate the policy of the underlying prohibition.

RESTATEMENT (THIRD) OF RESTITUTION § 32 (Tentative Draft No. 3, 2004).[8]

## 2. Accounting for Benefits and Setoffs

Viewed against this standard, Hoffman is entitled to no restitution. Much of the restitution Hoffman seeks does not represent value provided to Lloyd. Furthermore, as explained in the following paragraphs, the value Hoffman did provide Lloyd is more than offset by the increased debt that Hoffman placed on the Residence and that Lloyd will likely have to pay.

Lloyd does not dispute that he received value equal to the cash he received and his prior debt that Hoffman paid. Upon closing, Hoffman paid Lloyd $20,000 in cash. Hoffman also paid off the loans Lloyd had previously taken out against the Residence, which had a balance due of approximately $592,000.

Improvements to the Residence Hoffman made may also represent value Lloyd received. The parties differ largely as to how these improvements should be valued. Hoffman seeks reimbursement of the entire $14,500 he claims he spent on the improvements. Lloyd contends that the proper measure should be the value of the improvements to him. For the present analysis, I will use Hoffman's figure.

Operating expenses Hoffman paid should be considered value provided to Lloyd only for the period Lloyd had possession of the Residence. Hoffman seeks reimbursement of $163,000 he paid for

---

[8] The notes accompanying this draft provision provide that it reformulates the applicable rules of sections 197-99 of the Second Restatement of Contracts without altering specific outcomes.

-21-

property taxes, mortgage interest, insurance, and maintenance during the 40 months between the transfer and the end of 2006. Hoffman argues that if he had not purchased the Residence, Lloyd would have had to make these payments. While this is true, it is also true that if Lloyd had not sold the Residence and had made those payments himself, he also would have enjoyed possession and the other benefits of ownership for the entire 40-month period. It is undisputed that the Residence is now leased to third parties, and that Lloyd has been denied possession of the Residence for at least 15 of the 40 months since the sale closed. It is appropriate to make Lloyd responsible for expenses only for the period he had possession of the Residence. Runyan, supra, 2 Cal. 3d at 315; McCoy, supra, 70 Cal. App. 3d at 301. Thus, Lloyd is properly charged with no more than $101,875, which represents 25/40 of the $163,000 claimed.[9]

Lloyd should not be deemed to have received the rental value of the Residence in addition to the expenses of maintaining the property for the period he had possession of the Residence. To adjust for both rental value and avoided expenses would constitute double-counting. Charging Lloyd for the property taxes, maintenance, insurance, and mortgage interest Hoffman paid while Lloyd had possession is sufficient to prevent unjust enrichment, and more accurately measures the benefit Lloyd received. McCoy, supra, 70 Cal. App. 3d at 302 (monetary adjustment required upon

---

[9] Lloyd also contends that Hoffman is not entitled to reimbursement for any interest payments made, because any such amounts would represent payment on a loan subject to rescission under the Federal Truth-in-Lending Act. I need not reach this issue because, as noted below, I determine that Lloyd is not required to make any reimbursement of Hoffman as a condition to cancelling the sale, without regard to the TILA issue.

rescission of sale of property to take account of post-transfer, pre-rescission possession is not rent, but is merely a means to prevent unjust enrichment). Lloyd's possession should not be valued under the terms of the Lease, because Hoffman could not have become Lloyd's landlord without violating the statutory prohibition against taking title before the cancellation period expired. § 1696(b).

The other amounts Hoffman seeks do not represent value transferred to Lloyd. Hoffman seeks reimbursement of $26,500 in fees paid in obtaining the loan used to make the purchase, transfer taxes of $6,000 paid on the purchase, and $45,000 in management fees payable to himself for leasing the Residence. Finally, Hoffman seeks reimbursement of $400,000 in attorneys fees incurred, and to be incurred, in the present action. None of these amounts represent amounts Lloyd would have had to pay but for the transfer to Hoffman.[10]

The total value Lloyd received from Hoffman is more than offset by the corresponding detriment that Lloyd has suffered in the form of increased debt against the Residence. To effect the purchase, Hoffman obtained a loan from GreenPoint Mortgage in the amount of $640,000, secured by a deed of trust on the Residence. Later H&B Properties took out a second loan from Norcal Financial

---

[10] Hoffman appears to seek these attorney fees under the fee clause in the Settlement Agreement. As noted above, this court has determined that the release in the Settlement Agreement does not bar Lloyd's right to cancel the sale under HESCA, because of the anti-waiver provisions of section 1695.10. To the extent that Hoffman seeks to enforce the fee clause to require Lloyd to pay fees Hoffman incurred in unsuccessfully contesting Lloyd's exercise of the right to cancel under HESCA, the fee clause should also be considered an illegal contract. Under section 1695.7, Lloyd is entitled to recover attorneys fees as the prevailing party.

-23-

in the amount of $110,000, secured by a junior deed of trust on the Residence. The current combined balance on these loans is approximately $754,000.[11] The debt the Residence is now subject to exceeds by $26,125 the sum of all value Lloyd received from Hoffman.

| | | |
|---|---|---|
| Cash purchase price | $ | 20,000 |
| Prior debt retired | | 592,000 |
| Adjusted operating expenses | | 101,875 |
| Improvements | | 14,500 |
| Sub-total | | 728,375 |
| Less debt Hoffman incurred | | (754,500) |
| Net benefit conveyed | $ | 26,125 |

The rescinding party need not restore value received from the other party where that value has been fully offset by other effects of the transaction. <u>Gatje v. Armstrong</u>, 145 Cal. 370, 374 (1904).

**3.  Additional Policy Considerations**

Finally, I determine that imposing any condition on cancellation of the sale of the Residence would unduly interfere with both the express language and the policies of HESCA. The Legislature designed the equity seller's right to cancel not to require the unwinding of a completed transfer, by expressly prohibiting the equity purchaser from accepting consideration, receiving a deed, or encumbering the property before the right to cancel has expired. § 1695.6(b). Cancellation is more complex

---

[11] It is far from certain that Lloyd will be able to avoid these encumbrances. HESCA affords broad protection to loans extended by lenders unrelated to the purchaser, such as GreenPoint Mortgage. That the transfer to the equity purchaser may be set aside does not mean that a loan placed on the property by that equity purchaser may also be set aside. §§ 1695.6(b)(3), 1695.6(e), 1695.12, 1695.14(c). The holder of the second loan, Norcal Financial, is apparently owned by Hoffman, and Hoffman has at various times stated that he would cause that loan to be released. To date he has not done so. It is not appropriate at this stage for this court to disregard for Hoffman's benefit a loan that Hoffman continues to assert.

-24-

here, solely because Hoffman did not take care to ensure that the
right to cancel had expired before he completed the purchase.  This
is a case where Hoffman and Lloyd cannot both be restored to the
*status quo ante*, because some of the reimbursements Hoffman seeks
are for transactions costs that do not represent value provided to
Lloyd, and because those transaction costs were simply lost when
the sale was cancelled.  In such circumstances, it is Hoffman who
should bear the loss.  By violating section 1695(b), Hoffman
created the circumstances that prevent both parties from being
restored to the *status quo ante*.  <u>McCoy</u>, <u>supra</u>, 70 Cal. App. 2d at
303.

I determine that Lloyd need not tender any sum to Hoffman as a
condition to cancelling the sale of his Residence to Hoffman.  I
also determine that the policies embodied in HESCA require that the
Residence be restored to Lloyd immediately.  § 1695.  This court
will therefore order immediate entry of a judgment cancelling the
sale, quieting title to the Residence in Lloyd, and dismissing
Hoffman's claims.  Fed.R.Bankr.P. 7054(a); Fed.R. Civ.P.54(b).
Lloyd's claims for damages and attorneys fees will be determined at
a later date.

**CONCLUSION**

The Purchase-Sale Agreement did not substantially comply with
HESCA, because it did not contain the Next-to-Signature Notice of
the right to cancel required under section 1695.5(a).  Lloyd's
exercise of the right to cancel was timely under section 1695.5(d),
because he had not previously been afforded proper notice of that
right.  No conditions should be placed on Lloyd's right to cancel,

-25-

because Lloyd received no net benefit from the transaction that he
should be required to return to Hoffman.